UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNIGROUP, INC., | ) |
| | ) |
| Plaintiff and | ) |
| Counterclaim defendant, | ) |
| | ) |
| v. | ) No. 4:13 CV 857 DDN |
| | ) |
| AMERICAN UNDERWRITING | ) |
| SERVICES, LLC, | ) |
| | ) |
| Defendant and | ) |
| Counterclaim plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VANLINER INSURANCE COMPANY, | ) |
| | ) |
| Counterclaim defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before the court on the motion of plaintiff UniGroup, Inc. to dismiss the counterclaims of defendant American Underwriting Services, LLC (Doc. 16) and the motions of plaintiff UniGroup, Inc. and counterclaim defendant Vanliner Insurance Company to strike. (Docs. 41, 48.) The court heard oral argument on the motion to dismiss on August 15, 2013.

**I. BACKGROUND**

On May 6, 2013, plaintiff UniGroup, Inc., as assignee of Vanliner Insurance Company, commenced this action against defendant American Underwriting Services, LLC (AUS). (Doc. 1.) On August 9, 2013, UniGroup amended its complaint. (Doc. 26.)

Claims of UniGroup Against AUS

According to the amended complaint, the following occurred. UniGroup is a Missouri corporation with its principal place of business in Fenton, Missouri, and AUS is a Georgia

limited liability company with its principal place of business in Kennesaw, Georgia.  (Id. at ¶¶ 1-2.)

AUS is an independent insurance broker that solicits applications for certain types of commercial insurance, including the classes of commercial insurance offered by Vanliner Insurance Company.  (Id. at ¶ 8.)  Since at least 1999, AUS and Vanliner maintained an ongoing business relationship.  (Id. at ¶ 36.)  In September 2009, AUS entered into an insurance producer agreement with Vanliner.  (Id. at ¶ 9.)  At that time, Vanliner was a wholly owned subsidiary of UniGroup.  (Id.)  The contract obligated AUS to collect and remit all premium payments due on certain insurance policies produced by it and issued by Vanliner.  (Id. at ¶¶ 10-11; Doc. 1-1 at 4.)  The contract also provided notice procedures for AUS in the event of uncollectible premium payments.  (Doc. 1 at ¶ 13; Doc. 1-1 at 4.)

Subsequently, AUS failed to fulfill its contractual obligation by failing to collect and remit insurance premiums to Vanliner in the sum of $574,180.62 or provide proper notice.  (Doc. 1 at ¶ 12.)  Conversely, Vanliner performed its contractual obligations and conditions, which included paying commissions earned on insurance policies.  (Id. at ¶ 15.)  UniGroup demanded payment of AUS's contractual debt, but AUS refused to pay.  (Id. at ¶ 17.)

On February 1, 2012, Vanliner expressly assigned to UniGroup "any and all causes of action against AUS for unpaid amounts due to Vanliner from AUS under the Producer/Agency Agreements."  (Id. at ¶ 30; Doc. 26-1 at 22.)

UniGroup alleges breach of contract, action on account, and account stated.  (Doc. 1.)  It seeks actual damages in the amount of $574,180.62, prejudgment interest, and costs.  (Id.)

### Counterclaims of AUS against UniGroup

On June 18, 2013, defendant AUS filed a counterclaim against plaintiff UniGroup.  (Doc. 9.)  On September 11, 2013, AUS amended its counterclaim.  (Doc. 37.)  According to the amended counterclaim, the following occurred.  AUS sells lines of transportation insurance for companies and individuals in the commercial trucking industry.  (Id. at ¶ 7.)  It acts as a wholesale broker, placing policies underwritten by insurance carriers with retail agents (sub-producers) who then sell those policies to the insureds.  (Id. at ¶ 8.)

Around August 2008, AUS entered into a contract with Vanliner, under which it acted as a wholesale broker for commercial auto policies underwritten by Vanliner.  (Id. at ¶ 9.)

Throughout their business relationship, Vanliner knew AUS acted as a wholesale broker with policies underwritten by Vanliner. (Id. at ¶ 11.) At the end of each policy period for each insured entity, the contract required Vanliner to submit an audit to AUS for the amount of the premium due. (Id. at ¶ 12.) After receipt of the audit, AUS was to send the audited premium due to its sub-producer, who then would bill the insured directly. (Id. at ¶ 13.) Next, the insured would pay the sub-producer the total premium amount due, and the sub-producer would remit that amount less its commission to AUS. (Id. at ¶ 14.) Finally, AUS would pay the net premium amount received from the sub-producer to Vanliner less its commission. (Id. at ¶ 15.) Accordingly, AUS's payment to Vanliner depended on Vanliner submitting accurate premium audits. (Id. at ¶ 16.)

Vanliner, however, did not provide AUS with accurate premium audits throughout the course of their relationship. (Id. at ¶ 17.) Many sub-producers and insureds disputed the accuracy of the audits, which required AUS to request that Vanliner correct the audits. (Id. at ¶ 18.) Vanliner did not investigate or correct its audits. (Id. at ¶ 19.) Thereafter, Vanliner's failure to consistently provide accurate and timely audits impaired the ability of AUS to collect premiums and earn the related commissions. (Id. at ¶ 24.) On some occasions, Vanliner took over a year to provide AUS with audits necessary to collect premiums. (Id. at ¶ 22.) Occasionally, insureds went out of business or filed for bankruptcy by the time AUS received an accurate audit, rendering premiums uncollectable. (Id. at ¶ 23.)

Throughout their relationship, AUS notified Vanliner of inaccurate or untimely audits and submitted requests for information from Vanliner, which were ignored. (Id. at ¶ 25.) AUS provided prompt written and oral notice to Vanliner as to the need for accurate and timely audits, and it notified Vanliner of the inability to collect policy premiums because of Vanliner's failure to be accurate and timely. (Id. at ¶ 26-27.)

In July 2010, Vanliner terminated its relationship with AUS without providing a one-year renewal period to allow AUS to wrap up policies, collect premiums, and obtain renewal business. (Id. at ¶ 28.) Vanliner's termination further impaired the ability of AUS to collect premiums because the insured entities refused to pay premiums for policies they knew would not be renewed. (Id. at ¶ 29.)

AUS alleges breach of contract and breach of the implied covenant of good faith and fair dealing against UniGroup and Vanliner.  (Id. at ¶¶ 31-56.)  AUS seeks actual damages, costs, attorney fees, and prejudgment and post-judgment interest.  AUS further demands a jury trial.

## II. MOTIONS

UniGroup moves to dismiss AUS's counterclaims under F. R. Civ. P. 12(b)(6) for failure to state a claim, arguing that Vanliner assigned to UniGroup only its rights regarding the amounts payable by AUS and did not delegate to UniGroup Vanliner's contractual duties, obligations, or liabilities.  AUS responds that on the face of its pleading, it has stated viable claims upon which relief can be granted.  AUS further responds that UniGroup relies on matters outside the pleadings as support for its motion to dismiss and that even treating UniGroup's motion as one for summary judgment under Fed. R. Civ. P. 12(d), summary judgment would be improper and premature as discovery has only just begun in this case and therefore genuine disputes of material fact remain. (Docs. 16, 21.)

After the filing of the motion to dismiss, with the court's approval AUS amended its counterclaim to add Vanliner Insurance Company as a counterclaim defendant.  (Doc. 37.) The memorandum filed by AUS in support of its motion for leave to file the amended counterclaim did not change its opposition to the motion to dismiss filed by UniGroup, with AUS seeking the same relief from both counterclaim defendants that it originally sought only from UniGroup. (Docs. 34, 35, 37.)   Accordingly, the court considers UniGroup's motion to dismiss as it applies to the amended counterclaim.

UniGroup and Vanliner have also filed substantially similar motions to strike portions of AUS's amended pleadings that refer to Vanliner's failure to allow AUS a final one-year renewal period.  UniGroup and Vanliner argue that neither the express contract nor the implied covenant of good faith and fair dealing required Vanliner to allow AUS a renewal period.  AUS responds that UniGroup and Vanliner should have raised their arguments under Fed. R. Civ. P. 12(b)(6) and that Vanliner violated express contract provisions and the implied covenant of good faith and fair dealing by failing to allow a renewal period.  Unigroup and Vanliner reply that the motion to strike is proper because they seek to strike only specific allegations rather than to dismiss any claim. (Docs. 42, 49, 53, 57.)

### III. MOTION TO DISMISS AUS'S COUNTERCLAIM

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the counterclaim.  See Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010); Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001).  To survive a 12(b)(6) motion to dismiss, the allegations must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To meet the plausibility standard, the pleading must contain "more than labels and conclusions."  Id. at 555.  Rather, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

AUS argues that the court should exclude the assignment agreement, attached to UniGroup's amended complaint and incorporated by reference, from consideration as a matter outside the pleadings.  Alternatively, AUS argues that the court should treat the motion to dismiss as a motion for summary judgment and deny the motion as premature.

A motion to dismiss for failure to state a claim "must be treated as a motion for summary judgment when matters outside the pleadings are presented and not excluded by the trial court."  Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992).  "Most courts view 'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings."  BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687 (8th Cir. 2003).  For purposes of Fed. R. Civ. P. 12(b)(6) motions, in addition to the allegations in the pleading, courts may consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment."  Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).

Plaintiff UniGroup attached the assignment agreement as an exhibit to its amended complaint.  Additionally, the assignment agreement is incorporated by reference and is integral to the standing of UniGroup to assert the breach of contract claim.  Notably, the focus of the motion to dismiss is on AUS's pleadings rather than UniGroup's pleadings, because UniGroup seeks to dismiss AUS's counterclaims.  However, AUS's pleadings allege, "According to UniGroup's allegations in the Complaint, UniGroup succeeded to all of Vanliner's rights and

obligations under the agreement between Vanliner and AUS, and is thus liable to AUS under the Producer Agreement, and is thus liable to AUS as Vanliner's successor-in-interest," rendering the assignment agreement equally integral to defendant's counterclaim. (Doc. 37 at 14,16.) Therefore, the court may and does consider the assignment agreement without converting the motion to dismiss into one for summary judgment.

UniGroup moves for dismissal, arguing that Vanliner did not delegate its contractual duties or obligations to UniGroup.

The assignment agreement states:

1. Vanliner hereby assigns, transfers, and conveys to UniGroup, insofar as permitted by law, any and all causes of action against AUS for unpaid amounts due to Vanliner from AUS under the Producer/Agency Agreements including the right to prosecute such causes of action either in Vanliner's name or in its own.

(Doc. 26 at 22.)

The parties dispute whether this language of the assignment agreement creates a presumption that UniGroup assumed not only Vanliner's described causes of action against AUS but also Vanliner's liability and obligations under the Producer/Agency Agreement to which AUS is a party. AUS's authority for such a presumption involves cases where the terms refer to an assignment of "the contract," "all my rights under the contract," or other general terms. See Haarmann v. Davis, 651 S.W.2d 134, 136-37 (Mo. 1983); Hahn v. Earth City Corp., 625 S.W.2d 640, 643 (Mo. Ct. App. 1981); Mo. Rev. Stat. § 400.2-210(5); RESTATEMENT (SECOND) OF CONTRACTS § 328 (1981). However, in the facts alleged in this case, a presumption does not arise, because the assignment language before the court uses terms that are not general but specifically refer only to causes of action against AUS for a particular purpose.

Under Missouri law, for purposes of contract interpretation, "the terms of the contract are read as a whole and given their plain, ordinary, and usual meaning." Four Seasons Lakesites, Inc. v. HRS Properties, Inc., 317 S.W.3d 193, 200 (Mo. Ct. App. 2010). Contract interpretation is a question of law. Id. The language used in the assignment agreement does not delegate Vanliner's obligations to UniGroup but merely assigns to UniGroup Vanliner's causes of action against AUS for unpaid amounts due under agreements between Vanliner and AUS.

AUS argues that the assignment agreement document as produced is incomplete because the assignment agreement references UniGroup's agreement with National Interstate Insurance

-6-

Company that governed the purchase of Vanliner.  The document memorializing the assignment agreement references the purchase agreement in a "whereas clause," or recital.  However, "recitals are not strictly a part of the contract because they do not impose contractual duties on the parties."  G.H.H. Investments, L.L.C. v. Chesterfield Mgmt. Associates, L.P., 262 S.W.3d 687, 693 (Mo. Ct. App. 2008); State ex rel. Missouri Highway & Transp. Comm'n v. Maryville Land P'ship, 62 S.W.3d 485, 492 (Mo. Ct. App. 2001).  Although "Missouri courts look to the recitals to determine the intent of the parties when the operative language is ambiguous, uncertain, or indefinite," id. at 694, the court finds no ambiguity regarding the scope of the assignment.  Thus, AUS's argument that UniGroup failed to produce the entire assignment agreement is without merit.

AUS's allegations of breach of the express contract and of breach of the implied covenant of good faith and fair dealing against UniGroup are based solely on the assignment agreement.  Because the assignment agreement delegates no duties or obligations to UniGroup, AUS's counterclaims fail to state a claim against UniGroup upon which relief can be granted.  UniGroup's motion to dismiss is sustained.  AUS's counterclaims are dismissed without prejudice.

The dismissal of AUS's counterclaims will not deprive it of discovery regarding UniGroup's allegations of standing and claims.  However, even with dismissal of the counterclaims, inquiries regarding UniGroup's standing remain discoverable, as well as inquiries regarding Vanliner's liability and AUS's defenses.  See Fed. R. Civ. P. 26(b)(1).  Moreover, in the event that plausible theories for UniGroup's or Vanliner's liability arise, Fed. R. Civ. P. 15(a)(2) allows AUS to move for leave to amend its pleadings.

## IV. MOTIONS TO STRIKE

UniGroup and Vanliner have moved to strike from AUS's pleadings the allegations that Vanliner did not provide AUS a one-year renewal period to allow AUS to wrap up its business activities under the contract.  The court first considers whether UniGroup's and Vanliner's motions to strike should be considered under Fed. R. Civ. P. 12(b)(6) or 12(f).  Rule 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  'Impertinent' matter

consists of statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1382) rev'd on other grounds, 510 U.S. 517 (1994).  In ruling on a motion to strike, the court "must view the pleadings in the light most favorable to the pleader."  Morgan v. Midwest Neurosurgeons, LLC, 2011 WL 2728334, *2 (E.D. Mo. 2011).

The motions to strike do not seek to dismiss any counterclaim or affirmative defense in whole but rather only the allegations referring to the one-year renewal period.  UniGroup and Vanliner argue that these allegations are immaterial and impertinent to the claims and affirmative defenses because they incorrectly imply that the contract required Vanliner to permit a one-year renewal method.  AUS argues that this allegation arises as a matter of law from the language of the contract.  The motions to strike, under Fed. R. Civ. P. 12(b)(f), allow the court to consider whether this allegation is unfounded as a matter of law, and thus is immaterial.

As an initial matter, the court considers whether the motions to strike satisfy the prejudice requirement.  "[A] party must make a showing of prejudice before a court will grant a motion to strike."  Factory Mut. Ins. Co. v. Nebraska Beef, Inc., 2009 WL 2886315, *2 (D. Neb. 2009). "The prejudice requirement is satisfied if striking the [matter] would, for example, prevent a party from engaging in burdensome discovery, or otherwise expending time and resource litigating irrelevant issues that will not affect the case's outcome."  Fluid Control Products, Inc. v. Aeromotive, Inc., 2010 WL 427765, *2 (E.D. Mo. 2010).  Vanliner and UniGroup state that the allegations regarding the one-year renewal are prejudicial because they would require Vanliner and UniGroup to unnecessarily expend time and money conducting discovery on irrelevant issues.  This is a sufficient showing of prejudice.

Counterclaims of AUS against Vanliner

The parties dispute whether the express contract or implied covenant of good faith and fair dealing required Vanliner to permit AUS a one-year renewal period.  The relevant contract language is as follows:

**TERMINATION OF THIS AGREEMENT**
* * *
Termination Without Cause Upon Notice

> Either party may end this Agreement on written notice.  If Vanliner elects to do so, Vanliner will give you the length of notice required by the law of your state.
>
> **AFTER TERMINATION**
>
> Unless this Agreement is terminated because you have lost your authority to engage in the insurance business, the following provisions will apply.  Following termination of this Agreement for a period of one year, or for any greater period required by state law, if a request for continued representation is made and granted, you shall continue to represent Vanliner subject to the term of conditions of this Agreement as well as the following conditions . . .

(Doc. 16-1 at 7.)

UniGroup and Vanliner argue that the contract language conditioned the duty to allow a one-year renewal period on a request for continued representation and the grant of the request.  "A condition precedent denotes an event which qualifies a duty under an already enforceable contract."  Lowery v. Air Support Int'l, Inc., 982 S.W.2d 326, 329 (Mo. Ct. App. 1998).  The parties do not otherwise dispute the enforceability of the contract.  The duty to allow a one-year renewal was subject to a condition precedent, i.e., the request and the grant of the request.  AUS does not allege, and does not argue, that any party to the contract requested or granted a request for continued representation.  Thus, the condition precedent for the granting of a one-year renewal period was not satisfied.  "[N]o promise based upon a condition can be enforced as such until the contingency upon which it depends has happened."  Highland Inns Corp. v. Am. Landmark Corp., 650 S.W.2d 667, 672 (Mo. Ct. App. 1983).  Because AUS does not allege that any request or granting of a request for continued representation occurred, the express contract language did not require Vanliner to allow a one-year renewal period.

Alternatively, AUS argues that the implied covenant of good faith and fair dealing required Vanliner to allow a one-year renewal period.  "Implied in every contract is a covenant of good faith and fair dealing, requiring that the performance and enforcement terms be carried out in good faith."  Finova Capital Corp. v. Ream, 230 S.W.3d 35, 45 (Mo. Ct. App. 2007).  "This covenant prevents one party to a contract from exercising a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract."  Envtl. Prot., Inspection, & Consulting, Inc. v. City of Kansas City, 37 S.W.3d 360, 366 (Mo. Ct. App. 2000).  "The covenant of good faith and fair dealing encompasses an obligation imposed by law to prevent opportunistic behavior, that is,

the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." City of St. Joseph v. Lake Contrary Sewer Dist., 251 S.W.3d 362, 370 (Mo. Ct. App. 2008).  However, a court will not "find an implied covenant if the parties have either dealt expressly with the matter or have intentionally left the contract silent on the point."  Giessow Restaurants, Inc. v. Richmond Restaurants, Inc., 232 S.W.3d 576, 579 (Mo. Ct. App. 2007).

As set forth above, the implied covenant of good faith and fair dealing applies to the discretion permitted within contractual agreements.  The discretionary aspects of the contract terms at issue lie within the decision of one party whether to request from the other party or the decision of whether to grant the request from the other party.  However, AUS does not frame its pleadings in terms of either discretionary aspect.  Rather, AUS pleads without further specification, that "Vanliner exercised its unilateral discretion under the agreement to terminate the parties' relationship without providing a one-year renewal."  As stated, AUS has not alleged or argued that it requested a one-year renewal period.

Accordingly, to the extent that AUS's allegations characterize Vanliner's termination of the contractual relationship without providing a one-year renewal period as a breach of the express terms of the contract or a breach of the implied covenant of good faith and fair dealing, the court sustains Vanliner's motion to strike.

Affirmative Defense of Impossibility

UniGroup also seeks to strike the allegations referring to the one-year renewal period from AUS's affirmative defenses.  As an affirmative defense, AUS asserts the doctrine of impossibility, stating that the failure to provide a one-year renewal period rendered performance of the contract impossible.  According to the doctrine of impossibility, "[i]f a party, by contract, is obligated to a performance that is possible to be performed, the party must make good unless performance is rendered impossible by an Act of God, the law, or the other party."  Bolz v. Hatfield, 41 S.W.3d 566, 573 (Mo. Ct. App. 2001).  "A party pleading impossibility as a defense must demonstrate that it took virtually every action within its powers to perform its duties under the contract."  Id.  The alleged failure of Vanliner to allow a one-year renewal period may have some relevance to the doctrine of impossibility alleged by AUS and therefore, the court declines to strike this allegation as immaterial regarding this defense.

### Affirmative Defenses of Waiver and Estoppel

Additionally, AUS alleges that Vanliner's termination without renewal bars UniGroup's recovery due to the doctrines of waiver and estoppel.  "Waiver is the intentional relinquishment of a known right.  If waiver is implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right."  Roeder v. Ferrell-Duncan Clinic, Inc., 155 S.W.3d 76, 89 (Mo. Ct. App. 2004).  "Estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) an action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act."  JEP Enterprises, Inc. v. Wehrenberg, Inc., 42 S.W.3d 773, 778 (Mo. Ct. App. 2001).  The alleged failure of Vanliner to allow a one-year renewal period may have some relevance to the affirmative defenses of waiver and estoppel alleged by AUS and therefore, the court declines to strike these allegations as immaterial regarding these defenses.

### Affirmative Defense of Breach of Contract

As another affirmative defense, AUS alleges that Vanliner's breach of the express contract by failing to provide AUS with a one-year renewal period bars UniGroup's recovery.  However, as set forth above, the express contract did not require Vanliner to provide it a renewal period, and the court finds this allegation immaterial.

### Affirmative Defense of the Implied Covenant of Good Faith and Fair Dealing

AUS also alleges that Vanliner's breach of the implied covenant of good faith and fair dealing by failing to provide AUS with a one-year renewal period bars UniGroup's recovery.  For the reasons stated above for striking the allegations from AUS's counterclaim against Vanliner, the court also concludes that this allegation is immaterial and impertinent.

### Affirmative Defense of Unclean Hands

AUS also refers to Vanliner's termination without renewal in the affirmative defense allegation that the doctrine of unclean hands bars UniGroup's recovery.  "The doctrine of unclean hands is a defense that bars one who has acted wrongfully with respect to the subject of the suit from obtaining an equitable remedy."  Sangamon Associates, Ltd. v. Carpenter 1985

Family P'ship, Ltd., 165 S.W.3d 141, 145 (Mo. 2005). "[T]he clean hands doctrine does not bar a claim for damages at law." Karpierz v. Easley, 68 S.W.3d 565, 572 (Mo. Ct. App. 2002). UniGroup does not seek equitable relief. Thus, the court finds the reference to the renewal period within the assertion of the doctrine of unclean hands immaterial.

Accordingly, regarding the affirmative defenses of unclean hands and breach of express contract and the implied covenant of good faith and fair dealing, the court sustains the motions to strike.

Regarding the defenses of impossibility, waiver, and estoppel, the court denies the motion to strike. Additionally, to the extent that UniGroup's motion to strike concerns AUS's counterclaim against UniGroup, the motion is denied as moot due to the aforementioned dismissal of the counterclaim.

## V. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of plaintiff UniGroup, Inc. to dismiss defendant American Underwriting Services, LLC's counterclaims (Doc. 16) is sustained. The counterclaims of defendant American Underwriting Services, LLC are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the motions of plaintiff UniGroup, Inc. and Vanliner Insurance Company to strike (Docs. 41, 48) are denied as moot to the extent that they concern defendant's counterclaims in their entirety against UniGroup, Inc., and Vanliner.

**IT IS FURTHER ORDERED** that the motions of plaintiff UniGroup, Inc. and Vanliner Insurance Company to strike (Docs. 41, 48) are sustained as to the defenses of unclean hands and breach of express contract and the implied covenant of good faith and fair dealing.

**IT IS FURTHER ORDERED** that the motions of plaintiff UniGroup, Inc. and Vanliner Insurance Company to strike (Docs. 41, 48) are denied as to the defenses of impossibility, waiver, and estoppel.

                                          /S/   David D. Noce
                                      **UNITED STATES MAGISTRATE JUDGE**

Signed on November 25, 3013.